**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LIBERTY OILFIELD SERVICES, LLC, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 4:26-cv-319 |
| BERKLEY NATIONAL INSURANCE COMPANY, | § § § | |
| *Defendant.* | § § § | |

---

**DEFENDANT BERKLEY NATIONAL INSURANCE COMPANY'S
MOTION TO DISMISS PLAINTIFF'S OPERATIVE PLEADING AND
BRIEF IN SUPPORT**

---

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES............................................................................... ii

**I.**   PRELIMINARY STATEMENT ........................................................................ 1

**II.**   RELEVANT FACTS...........................................................................................3

    1.  The Underlying Litigation ......................................................................... 3

    2.  The Policy ....................................................................................................4

**III.** LEGAL STANDARD ......................................................................................... 6

    1.  Dismissal Pursuant to Rules 8(a) and 12(b)(6)...................................... 6

    2.  Consideration of the Policy, Underlying Complaint and Coverage
       Correspondence........................................................................................... 8

**IV.** ARGUMENT AND AUTHORITY ........................................................................ 9

    1.  Liberty's Complaint Must be Dismissed for Insufficient Service of Process
       Under FRCP 12(b)(5) ................................................................................ 9

    2.  Liberty Lacks Standing to Assert Occidental's Alleged Rights as an Additional
       Insured Under the Policy ........................................................................ 11

    3.  The "Abuse or Molestation Exclusion" Applies to Preclude Coverage.............. 14

         a.  The "Abuse or Molestation Exclusion" Applies Because Despres Was
            In the "Care, Custody or Control" of Liberty ........................................ 17

         b.  Despres was in the "Care, Custody or Control" of Occidental, a Purported
            Additional Insured .................................................................................. 20

         c.  The "Abuse or Molestation Exclusion" Further Applies Because
            Occidental Is Alleged To Have Been Responsible for the Negligent
            Retention and Supervision of Mr. Bateman ........................................ 21

**V.**   CONCLUSION.................................................................................................... 22

i

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Allstate Ins. Co. v. Starke*, 797 P.2d 14, 17 (Colo. 1990)) ................................................. 14

*Am. Family Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 122 (Colo. 2016) ............................. 8

*Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) ..................... 13

*Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020); *see also Iqbal*, 556 U.S. at 678 ... 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................................ 6

*Barry v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 659510, at *3 (D. Colo. Jan. 16, 2024)

..................................................................................................................................... 7

*Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) .......................... 16

*Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................................ 6

*Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 822 F. App'x 835, 838 (10th Cir.

2020) .......................................................................................................................... 14

*Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 27 (Tex. App. – Houston [14th
Dist.] 2020, no pet.)) ................................................................................................. 11

*Collective Ints., Inc. v. Reagan Nat. Advert.*, 2010 WL 2977458, at *3 (Tex. App. –
Austin July 29, 2010) ................................................................................................ 11

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) ................. 8

*COR 1558 Props., LLC v. Sunbelt Rentals, Inc.*, 2023 WL 4499885, at *2 (Tex. App. –
Corpus Christi-Edinburg July 13, 2023) .............................................................. 10, 11

*Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997) .......................................... 7

*Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) ............................................ 19

*Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo. 1996) ........................................... 14

*Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 748 (Tex. 2006) ........................................ 15

*First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) ..................................................... 12

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) ..................................... 15

*Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008) ............................................ 21

*Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ................................................................................................................................. 15

*Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997) ...................... 15

*Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)) ........................... 15

*Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154-55 (Tex. 2012) ................................. 12

*Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ....... 7

*Hinojosa v. Dairy Farmers of Am., Inc.*, 2024 WL 5301760, at *4 (S.D. Tex. Dec. 12, 2024) ................................................................................................................................ 20

*JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 865 (Tex. 2021) ............................ 19

*JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015) ............. 7

*Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ...................... 8

*Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012) ............................... 7

*Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458-59 (5th Cir. 2005) ....................... 12

*Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ................................................................. 12

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)) ................................................. 12

*Maddison Dual Fuels, Inc. v. S. Union Co.*, 944 S.W.2d 735, 738 (Tex. App. – Corpus Christi-Edinburg 1997, no writ) .................................................................................... 10

*MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) .............................................................................................................................. 8

*Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 555 (Tex. 2022) ..... 20

*Merrimack Mut. Fire Ins. Co. v. Ramsey*, 982 A.2d 195, 198 (Conn. App. 2009) .......... 16

iii

*Miller v. Cas. Ins. Co.*, 160 P.3d 408, 412 (Colo. App. 2007) ............................................. 8

*Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017) ............. 15, 16

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 608 (Tex. 2008) .................................................................................................................................... 12

*Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994) ...................................... 13

*Nautilus Ins. Co. v. Our Camp Inc.*, 136 Fed. Appx. 134, 139 (10th Cir. 2005) .............. 17

*P&S LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 650 F. App'x 561, 566 (10th Cir. 2016) ..................................................................................................................... 14

*Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1055 (Colo. 1994) .................................................................................................................. 14

*Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003)) ............ 15

*Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) .............................................. 19

*R&M Enters. v. American Southern Ins. Co.*, 2018 WL 573002, *3 (S.D. Tex. Jan. 25, 2018) ................................................................................................................................ 8

*Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ......................................... 7

*RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) ....................... 15, 16

*Southern Cty. Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 464–65 (Tex. App. 2000) ........... 13

*State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997) ....................... 14

*Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)) ................. 15

*Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60 (Colo.1990)) ................... 14

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 910 (W.D. Tex. 2021) ........................................................................................................... 6

*Texas Mach. & Equip. Co. v. Gordon Knox Oil & Expl. Co.*, 442 S.W.2d 315, 317 (Tex. 1969) ............................................................................................................................. 13

*Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004)) ............................................ 14

*Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951) .................... 16

*USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ........................... 7

*Valley Forge Ins. v. Field*, 670 F.3d 93, 99 (1st Cir. 2012) ............................................. 17

*Warth v. Seldin*, 422 U.S. 490, 500 (1975) ....................................................................... 14

*Westchester Surplus Lines Insurance Co. v. Maverick Tube Corp.*, 722 F. Supp. 2d 787, 794 (S.D. Tex. 2010) ....................................................................................................... 15

**Statutes**

TEX. BUS. ORG. CODE § 5.251 ........................................................................................... 9
TEX. BUS. ORG. CODE § 5.252) ......................................................................................... 10
TEX. R. CIV. P. 107(d) ...................................................................................................... 10

**Rules**

Rule 12(b)(1) ....................................................................................................................... 13
Rule 12(b)(5) ....................................................................................................................... 11
Rule 12(b)(6) ............................................................................................................ 5, 6, 9, 13
Rules 8(a) .............................................................................................................................. 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LIBERTY OILFIELD SERVICES, LLC, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 4:26-cv-319 |
| BERKLEY NATIONAL INSURANCE COMPANY, | § § § § | |
| *Defendant.* | § § | |

**DEFENDANT BERKLEY NATIONAL INSURANCE COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S OPERATIVE PLEADING AND**
**BRIEF IN SUPPORT**

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), Defendant Berkley

National Insurance Company ("Berkley"), by and through its attorneys, Kennedys CMK

LLP, moves to dismiss the First Amended Petition (the "Liberty Petition") filed by Plaintiff

Liberty Oilfield Services, LLC ("Liberty" or "Plaintiff") in state court prior to removal,

which remains the operative pleading. The Liberty Petition and its exhibits are attached as

*Exhibit A* to this Motion.

**PRELIMINARY STATEMENT**

In this action, Liberty claims that Berkley wrongfully denied coverage for an

underlying abuse claim where Berkley's Policy contains a clear and unambiguous "Abuse

and Molestation" exclusion.  As a matter of law, Liberty's Petition fails to state a claim

upon which relief can be granted and should be dismissed. Further, and as explained herein,

-1-

service of Liberty's Petition was improper and, for this separate and independent reason, the Petition must be dismissed.

On June 6, 2024, Occidental Petroleum Corporation ("Occidental") issued a letter to Liberty demanding a defense and indemnification from Liberty for claims asserted in the lawsuit, *Shawn Despres v. Prime Energy Services LLC,* cause no. 2023-28663, filed in the 127th District Court, Harris County, Texas (the "Despres Lawsuit"). Occidental sought coverage from Liberty's insurer as Liberty's purported indemnitee pursuant to a Master Services Agreement ("MSA"), in which Liberty allegedly agreed to indemnify and defend Occidental (OXY USA Inc.) for certain liabilities. Berkley denied coverage for the Despres Lawsuit based on the "Abuse or Molestation" exclusion in the Berkley Policy, and reserved all of its rights under the terms, conditions and exclusions of the Policy, whether or not stated.

Review of the Policy and the operative pleading in the Despres Lawsuit, as well as the allegations in Liberty's Petition, confirm that Berkley's declination of coverage was correct and, consequently, Liberty has failed to state a claim for coverage or bad faith denial under the circumstances present here.

In this Petition, Liberty sets forth two causes of action: (1) breach of contract and (2) bad faith denial of insurance coverage. When the Liberty Petition is stripped of legal conclusions, it is evident that Liberty has not pleaded sufficient facts to allow the Court to draw a reasonable inference that Berkley could be liable for Liberty's claims. The Petition fails to meet the pleading requirements or Rule 12(b) as explained in *Twombly* and *Iqbal*.

Accordingly, Berkley respectfully requests that the Court dismiss the Liberty Petition in its entirety.

## **RELEVANT FACTS**

### I.　The Underlying Litigation

On May 9, 2023, Shawn Despres ("Despres") filed a petition in Harris County, Texas against Romell Bateman, Prime Energy Services, LLC ("Prime"), and Occidental seeking over $1 million as compensation for personal injuries that Despres allegedly received on December 2, 2022. The operative Petition in the Despres Lawsuit is attached to this Motion as *Exhibit B*.[1]

According to Despres, prior to the incident, he was employed by Triple S Express LLC d/b/a Coast to Coast Logistics ("C2C") and present at a worksite outside Midland, Texas. *Exhibit B*, ¶ 11. At the time of the incident, Romell Bateman was the owner of Prime. *Id.* C2C was a contractor of Liberty hired to perform work at the site owned by Occidental. *Ex. A*, ¶¶ 19 & 22.

Despres had received complaints that Romell Bateman was threatening various workers at the job site and had threatened one individual that he would "break his face." *Ex. B*, ¶ 11. Despres relayed this information to a supervisor at Occidental, the entity responsible for overseeing the job site, prior to the incident. *Id.*

On December 2, 2022, Despres approached Bateman to discuss his prior threats and attempt to resolve the situation so the parties could return to work amicably. *Id.* at ¶ 12.

---

[1] As discussed in Section II below, the Court may consider the exhibits attached to this Motion, because they are referenced in and form the basis of the Liberty Petition.

Bateman, allegedly without any provocation, punched Despres in his face and fractured his orbital socket. *Id.* Despres suffered facial fractures that required multiple surgeries to correct. *Id.*

Based on the foregoing, Despres asserted causes of action for Assault (against Bateman and Prime); Negligence (against Occidental and all Defendants); and Gross Negligence (against Occidental and all Defendants). *Ex. B*. The Despres Lawsuit also includes a section alleging that the employees responsible for ensuring the safety of the premises were acting within the course and scope of their employment or agency as the employees, servants, or agents of Defendants (including Occidental), and thus, these entities are liable to Despres under respondeat superior, apparent agency, or agency by estoppel. *Id.*

## II.    The Policy

Berkley issued Energy Commercial General Liability Policy, No. EGL003475113 to Liberty for the September 1, 2022 to September 1, 2023 policy period (the "Policy"). A copy of the Policy is attached hereto as *Exhibit C*. The Policy has a $1,000,000 Limit of Liability per Occurrence, and a $2,000,000 General Aggregate Limit of Liability. *Ex. C.* The Policy generally covers Liberty's liability for bodily injury or property damage, subject to all terms, conditions and exclusions set forth in the Policy.

The Policy contains the following exclusion applicable here.

### Abuse or Molestation Exclusion

This endorsement modifies insurance provided under the following:

Energy Commercial General Liability Policy

-5-

The following is added to:

**A.** Section VII. Exclusions, Subsection B. Bodily Injury and Property Damage Exclusions, and

**B.** Section VII. Exclusions, Subsection D. Personal and Advertising Injury Exclusions.

This policy does not apply to:

**<u>Abuse or Molestation</u>**

**BODILY INJURY, PROPERTY DAMAGE,** or **PERSONAL AND ADVERTISING INJURY** arising out of:

**a.** The actual, alleged, suspected or threatened **ABUSE** or molestation by anyone of any person while in the care, custody or control of any insured, or

**b.** The negligent:

  **(1)** Employment;
  **(2)** Investigation;
  **(3)** Supervision;
  **(4)** Reporting to the proper authorities, or failure to so report; or
  **(5)** Retention;

of a person for whom any INSURED is or ever was legally responsible and whose conduct would be excluded in Paragraph a. above.

**c.** For purposes of this endorsement, the following definition is added to Section IX. Definitions:

**ABUSE** means an act which is committed with the intent to cause harm.

*See Ex. C.*

## LEGAL STANDARD

### I.    Dismissal Pursuant to Rules 8(a) and 12(b)(6)

Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 12(b)(6) mandates dismissal of a complaint if it fails to state a claim upon which relief can be granted. The complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has "facial plausibility" when the facts pleaded allow the court to draw a reasonable inference "that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts do "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020); *see also Iqbal*, 556 U.S. at 678 (explaining a court is not bound to accept a legal conclusion as true when considering a motion to dismiss). In insurance coverage disputes under Texas and Colorado law, a complaint may be dismissed under Rule 12(b)(6) where the pleadings and attached documents demonstrate as a matter of law that there is no coverage under the policy. *See, e.g.*, *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F. Supp. 3d 896, 910 (W.D. Tex. 2021), *aff'd sub nom*, 22 F.4th 450 (5th Cir. 2022) ("[w]hile the Court is not unsympathetic to Plaintiffs' financial losses, the unambiguous terms of the Policy do not provide coverage for solely economic losses unaccompanied by physical property loss or damage to their property") *See also Khalik v. United Air Lines*, 671 F.3d

1188, 1190–91 (10th Cir. 2012) (applying Colorado law) (affirming dismissal where allegations were conclusory and failed to plausibly state a claim).[2]

Moreover, where there is no coverage under the policy, there can be no viable claim for bad faith denial of coverage. Under Texas law, as a general rule, "there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("Texas courts have clearly ruled that ... an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract"); *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) (reaffirming that an insured generally cannot recover for bad faith without establishing entitlement to policy benefits). An exception exists only if the insurer commits an extreme act causing injury independent of the policy claim, which is not alleged here. *Stoker*, 903 S.W.2d at 341.

Similarly, Under Colorado law, to allege bad-faith breach of an insurance contract, a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness. *Barry v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 659510, at *3 (D. Colo. Jan. 16, 2024); *see Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 551 (Colo. 1997). Where an insurer has a reasonable basis for denying a claim, both

---

[2] There is no choice of law provision in the Policy issued to Liberty; therefore, we address Texas law (the law of the forum and location of the underlying lawsuit) and Colorado law (the address of Liberty set forth in the declarations of the Policy) where appropriate.

statutory and common-law bad faith claims likewise fail where the claimed damages are based on the allegedly wrongful denial of benefits. *See Am. Family Mut. Ins. Co. v. Hansen*, 375 P.3d 115, 122 (Colo. 2016); *Miller v. Cas. Ins. Co.*, 160 P.3d 408, 412 (Colo. App. 2007). *See also MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) ("It is settled law in Colorado that a bad faith claim must fail if, as is the case here, coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage").

As the Liberty Petition fails to satisfy Rule 8(a), dismissal under Rule 12(b)(6) for failure to state a claim is appropriate.

## II.   Consideration of the Policy, Underlying Complaint and Coverage Correspondence

This Court may – and should – consider the Policy, pleadings filed in the underlying litigation and the allegations of Liberty's Petition in consideration of this Motion. "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *see also Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (same). When deciding a motion to dismiss, it is also appropriate for the court to consider exhibits that negate assertions in the pleading at issue. *See* Civil Action No. 4:16-CV-03639, *R&M Enters. v. American Southern Ins. Co.*, 2018 WL 573002, *3 (S.D. Tex. Jan. 25, 2018).

In its Petition, Liberty references the Despres Lawsuit in forming the basis for its claim under the Policy but fails to attach it as an exhibit. Given that an insurer's duty to

defend must be determined, at least in part, by reference to the actual claims against an insured, the First Amended Petition in the Despres Lawsuit is attached hereto as *Exhibit B*.

**ARGUMENT AND AUTHORITY**

Berkley respectfully requests that the Court dismiss the Liberty Petition in its entirety as it was not properly served on Berkley. Separately, to the extent the Court considers the substance of the Petition, it must be dismissed pursuant to Rule 12(b)(6) as it fails to state a claim with regard to each cause of action.

**I.     Liberty's Complaint Must be Dismissed for Insufficient Service of Process Under FRCP 12(b)(5).**

Liberty purports that service was made on Berkley through the Texas Secretary of State under Texas Business Organizations Code § 5.251. *Ex. A*, Liberty Petition, ¶ 25. Liberty did in fact attempt service through the Texas Secretary of State. The purported service letter from the Texas Secretary of State is attached hereto as *Exhibit D.* Liberty's attempted service on Berkley is improper as the referenced statute only permits substituted service on the Secretary of State when a defendant "does not have a registered agent" or when the registered agent cannot be served with reasonable diligence. TEX. BUS. ORG. CODE § 5.251(1).

That condition is not met here. Berkley maintains a registered agent for service of process in Texas despite Liberty's statement to the contrary. *Ex. A*, Liberty Petition, ¶ 25. Had Liberty used any reasonable diligence, it would have discovered this fact. The law is clear that service on the Texas Secretary of State is not a shortcut or alternative when a registered agent is on file and available (or could be reached with reasonable efforts at the

registered office). Plaintiffs must first make a good-faith, documented attempt to serve the registered agent at the registered office. Only if those efforts fail with "reasonable diligence" may they then serve the Secretary of State (with duplicate copies, fee, etc., per TEX. BUS. ORG. CODE § 5.252). NUMBER 13-22-00487-CV, *COR 1558 Props., LLC v. Sunbelt Rentals, Inc.*, 2023 WL 4499885, at *2 (Tex. App. – Corpus Christi-Edinburg July 13, 2023) ("prior to service on the Secretary of State, the record must affirmatively show that reasonable diligence was taken to serve the registered agent") (citing *Maddison Dual Fuels, Inc. v. S. Union Co.*, 944 S.W.2d 735, 738 (Tex. App. – Corpus Christi-Edinburg 1997, no writ) ("When a citation has been returned unserved, the officer's return must show the diligence used by the officer to execute the citation and the cause of his failure to execute it")).

Moreover, merely pleading that service should be issued on the Secretary of State is not in strict compliance with the rules regarding service. *See* TEX. R. CIV. P. 107(d); *COR 1558 Props., LLC*, 2023 WL 4499885, at *2. Without more, a court cannot presume that reasonable diligence was in fact exercised. *See id.*; *Maddison Dual Fuels*, 944 S.W.2d at 738. Thus, service on the Secretary of State was not proper. *See* TEX. BUS. ORG. CODE ANN. § 5.251(1); *Maddison Dual Fuels*, 944 S.W.2d at 738.

To be clear, Berkley is authorized to do business in Texas and has continuously maintained a registered agent for service of process in the State. *See* Texas Department of Insurance Report of Agent for Service of Process attached as *Exhibit E*. Liberty's Petition affirmatively alleges, incorrectly, that Berkley "does not currently have a Registered Agent for service of process in Texas." *Ex. A, ¶ 25. See* NUMBER 13-22-00487-CV, *COR 1558*

-10-

*Props., LLC*, 2023 WL 4499885 at *2 (Tex. App. July 13, 2023) ("Although Sunbelt's amended petition asserted that the address where service was attempted was not a viable address, pleadings are generally not evidence") (citing *Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 27 (Tex. App. – Houston [14th Dist.] 2020, no pet.)); *see also Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971); *cf.* No. 03-08-00283-CV, *Collective Ints., Inc. v. Reagan Nat. Advert.*, 2010 WL 2977458, at *3 (Tex. App. – Austin July 29, 2010) (mem. op.) (concluding service on Secretary of State was proper where process server's recitations detailed attempts made to execute service on the registered agent before serving the Secretary of State).

Accordingly, because Liberty failed to properly serve Berkley, this action must be dismissed under Rule 12(b)(5).

## II.     Liberty Lacks Standing to Assert Occidental's Alleged Rights as an Additional Insured Under the Policy.

Independently, dismissal is required because Liberty lacks standing to assert claims based on Occidental's purported additional insured status under Berkley's Policy. Liberty's Petition repeatedly alleges that Berkley breached duties owed to Occidental as an additional insured and seeks to recover damages flowing from that alleged breach. But Occidental is not a plaintiff in this action. Liberty does not allege that Occidental assigned its rights under the Policy (because it has not), nor does Liberty identify any contractual or statutory basis permitting it to prosecute Occidental's insurance claims (because there is none).

-11-

Standing requires (1) an injury in fact that is concrete and particularized, (2) fairly traceable to the defendant's conduct, and (3) likely to be redressed by a favorable decision. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154-55 (Tex. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 458-59 (5th Cir. 2005)(air carrier lacked standing to challenge ruling of ARB, having shown no injury-in-fact or substantial likelihood of injury). In a breach of contract action, the plaintiff must be a party to the contract or have privity, and the breach must cause injury to the plaintiff. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (plaintiff must show privity or third-party beneficiary status to sue for breach). As a general matter, "a litigant must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

Here, Liberty asserts breach of contract for Berkley's failure to defend and indemnify *Occidental* as an additional insured. Liberty Petition, ¶¶ 49-50. Under Texas insurance law, the duty to defend is personal to the insured, and the additional insured must tender its defense directly to the insurer to trigger the duty. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 608 (Tex. 2008) (additional insured must request a defense from the insurer to trigger duty; notice from named insured insufficient).

Liberty alleges no direct tender from Occidental to Berkley; instead, Occidental tendered to Liberty, and Liberty tendered to Berkley. *Exhibit A*, Liberty Petition, ¶ 37. Thus, any breach of duties to Occidental as a purported additional insured did not cause injury to

Liberty. To the extent Berkley owes any obligation to Occidental as an additional insured, Occidental is the real party in interest, not Liberty.

Further, Texas law is clear that, absent an assignment (or another recognized transfer of rights), Liberty cannot prosecute Occidental's alleged policy rights – because the assignee (not some other entity) becomes the "real party in interest" with authority to pursue the claim. *See Texas Mach. & Equip. Co. v. Gordon Knox Oil & Expl. Co.*, 442 S.W.2d 315, 317 (Tex. 1969) (recognizing that an assignee may sue in its own name or the assignor's name); *Southern Cty. Mut. Ins. Co. v. Ochoa*, 19 S.W.3d 452, 464–65 (Tex. App. 2000) (explaining that "when a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit"). Liberty pleads no assignment from Occidental and no right of subrogation.

The bad faith claim (Count 2) similarly fails for lack of standing insofar as it is based on a denial of coverage to Occidental. Bad faith requires a special relationship between the insurer and the insured. *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987) (citing *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984)). Liberty has no standing to assert bad faith on Occidental's behalf. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697-98 (Tex. 1994) (explaining that, in the insurance context, the duty of good faith and fair dealing "arises only when there is a contract giving rise to a 'special relationship'").

Because Liberty lacks standing to assert Occidental's alleged rights as an additional insured, its claims must be dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1). The same defect independently warrants dismissal under Rule 12(b)(6) because

Liberty has failed to plead a plausible claim for relief based on rights it does not possess. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975).

## III.    The "Abuse or Molestation Exclusion" Applies to Preclude Coverage.

Colorado courts construe an insurance policy's terms according to principles of contract interpretation. *P&S LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 650 F. App'x 561, 566 (10th Cir. 2016) (citing *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004)). Under Colorado law, "[i]nsurance policies are contracts, and must be construed to carry out the intent of the parties." *Bethel v. Berkshire Hathaway Homestate Ins. Co.*, 822 F. App'x 835, 838 (10th Cir. 2020) (citing *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 17 (Colo. 1990)). "Whenever possible, the parties' intent must be ascertained from the policy language alone." *Id*. Colorado courts "will enforce the policy as written, unless there is an ambiguity in the policy language." *State Farm Mut. Auto. Ins. Co. v. Stein*, 940 P.2d 384, 387 (Colo. 1997). A policy provision is ambiguous when "it is reasonably susceptible on its face to more than one interpretation." *Id.* The parties' "mere disagreement" does not create an ambiguity. *Id.* When a contractual provision is clear and unambiguous, courts should neither rewrite it nor limit its effect by a strained construction. *Id. (citing Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1055 (Colo. 1994); *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60 (Colo.1990)). Thus, in the absence of ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. *See Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 30 (Colo. 1996).

-14-

Likewise, Under Texas law, insurance policies are interpreted using the ordinary rules of contract interpretation, with all terms read together and each clause and word given effect." *Westchester Surplus Lines Insurance Co. v. Maverick Tube Corp.*, 722 F. Supp. 2d 787, 794 (S.D. Tex. 2010) (citing *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 748 (Tex. 2006); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003)). When interpreting insurance policies, Texas courts determine the parties' intent as reflected in the terms of the policy itself." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257–58 (Tex. 2017) (citing *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009)) Texas courts "examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (quoting *Guardian Trust Co. v. Bauereisen*, 121 S.W.2d 579, 583 (Tex. 1938)). Unless the policy dictates otherwise, Texas courts give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (citing *Gilbert*, 327 S.W.3d at 126). If a court determines that only one party's interpretation of the insurance policy is reasonable, then the policy is unambiguous and the reasonable interpretation should be adopted. *Id.* (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997)).

A contract is not ambiguous simply because the parties to a lawsuit offer conflicting interpretations of the contract's provisions. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 139 (Tex. 2015)). A policy is ambiguous if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation. *Id.* (citing *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)).

Here, there is no dispute that the Despres Lawsuit alleges "abuse" as defined by the Berkley Policy – "an act which is committed with the intent to cause harm." Liberty does not contend otherwise. Rather, Liberty contends that despite this broad exclusion, Berkley intended to cover the alleged abuse at issue in the Despres Lawsuit. Liberty's contention fails as a matter of law. Courts enforce "abuse" exclusions according to their plain terms, including where the underlying conduct is non-sexual physical violence and even when pleaded as negligence. *See, e.g.*, *Merrimack Mut. Fire Ins. Co. v. Ramsey*, 982 A.2d 195, 198 (Conn. App. 2009) (physical-abuse exclusion for bodily injury "arising out of … physical or mental abuse" barred coverage for negligence claims arising from a stabbing; court rejected arguments that intent-related considerations avoided the exclusion).

The "Abuse or Molestation Exclusion" provides that the Policy does not apply to bodily injury arising out of: "(a) the actual, alleged, suspected or threatened **abuse** or molestation by anyone of any person while in the care, custody or control of any insured, or, (b) the negligent employment, investigation, supervision, [reporting or failure to report], or retention of a person for whom any **insured** is or ever was legally responsible

-16-

and whose conduct would be excluded Paragraph a. above." The Policy separately defines "ABUSE" broadly to include any act committed with intent to cause harm, which encompasses the alleged intentional physical assault at issue here.

### a. The "Abuse or Molestation Exclusion" Applies Because Despres Was In the "Care, Custody or Control" of Liberty.

Both the Policy and case law support the argument that the care, custody, or control requirement in paragraph a. of the exclusion applies to the *victim* of the abuse. In *Nautilus Ins. Co. v. Our Camp Inc.*, 136 Fed. Appx. 134, 139 (10th Cir. 2005), the Court wrote the following.

> Defendants assert the exclusion by its very terms does not apply to the co-camper who committed the abuse because he is not an insured or agent of the camp. As the district court concluded, however, the plain language of the exclusion encompasses the co-camper: 'This insurance does not apply to "bodily injury" ... arising out of: (1) The actual or threatened abuse or molestation *by anyone* of any person while in the care, custody or control of any insured.' App., vol. I at 182 (emphasis added).

Because the camper who suffered the abuse was in the care, custody or control of the insured, the exclusion applied. *Id.* at 139. *See Valley Forge Ins. v. Field*, 670 F.3d 93, 99 (1st Cir. 2012) (finding abuse or molestation exclusions "have generally been found to be unambiguous in the face of attacks on various parts of the language used" and citing cases from across the nation finding the provision unambiguous).

In its Petition, Liberty falsely recounts the coverage position that Berkley issued on March 11, 2025. Berkley's position is not that Mr. Bateman was in the care, custody or control of Liberty as Liberty contended. Rather, as the employee of Liberty's subcontractor, *Mr. Despres* was in the care, custody or control of Liberty. *See Ex. A*,

-17-

Liberty Petition. At no time throughout the claim process did Berkley ever take the position that Mr. Bateman was in the care, custody, or control of Liberty.

Under the applicable Policy exclusion, paragraph a., it is the person who is the subject of the abuse that must be in the care, custody or control of any insured. The conduct that is excluded, on the other hand, can be committed "by anyone." Mr. Despres approached Mr. Bateman and Mr. Bateman allegedly punched Mr. Despres in his face, causing injury. Mr. Despres was an employee of C2C at the time of the incident. C2C was a subcontractor of Liberty to provide services in connection with an Occidental worksite in Texas. *See Ex. A*, ¶¶ 19, 22. Liberty alleged that Mr. Bateman was the owner of a separate company called Prime Energy Services, LLC. *Id.* at ¶ 7.  Here, the abuse was allegedly committed by Bateman when he punched Mr. Despres in the face. This would be considered an act committed with the intent to commit harm, thus qualifying as abuse under the plain language of the Policy exclusion.

As an employee of a subcontractor of Liberty, Mr. Despres was in the care, custody, or control of Liberty within the meaning of the exclusion. Despres was not a member of the general public or a party with no relation to Liberty. Rather, Liberty had a direct contractual relationship with C2C and, as the entity that engaged C2C's services, owed a duty to C2C and its employees to provide a safe workplace. In fact, the MSA between Liberty and Occidental (*Ex. A*, Liberty Petition, Exhibit A) demonstrates that Liberty was required to comply with Occidental's established health, environment and safety ("HES") policies and procedures, and that Liberty agreed "to be responsible for all HES training, practices, and supervision for all of [Liberty's] employees and other personnel (including

personnel of subcontractors) …". *See Ex. A*, Liberty Petition, Exhibit A at ¶ 12 (emphasis added); *see also JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 865 (Tex. 2021) (general contractor owes duty to provide safe workplace to subcontractor employees if it retains "some control over the manner in which the contractor performs the work that causes the damage"); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985) (adopting Restatement (Second) of Torts § 414, holding that one who retains control over any part of the work owes duty to exercise that control with reasonable care to prevent harm to others); *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002) (reaffirming that general contractor or premises owner owes duty to independent contractor's employees if it retains actual or contractual control over the work).

The MSA between Liberty and C2C demonstrates that Liberty did in fact establish safety protocols and procedures and that C2C personnel were required to comply with these procedures *and other instructions of Liberty*. *See Ex. A*, Liberty Petition, Exhibit D (Liberty-C2C MSA), ¶ 9. This section of the MSA, entitled "Compliance with Instructions of Company and Company Customers" provides that "[C2C] and its employees shall comply with all of the terms, provisions, requirements and conditions that are contained in any (a) verbal or written instructions given by [Liberty]; (b) Company policies, including without limitation, those set forth in Exhibit C…". *Id.* (emphasis added). *See Ex. A*, Liberty Petition, Exhibit D (Liberty-C2C MSA), Exhibit C entitled "Safety Protocols."

Based on the allegations and documents relied upon by Liberty in its Petition, Mr. Despres, as an employee of C2C, was in the care, custody or control of Liberty within the

meaning of the "Abuse and Molestation Exclusion." As such, coverage is not provided for the alleged assault of Mr. Despres by Mr. Bateman, as the alleged abuse was committed by "anyone" of someone who was in the care, custody, or control of an insured, Liberty.

### b. Despres was in the "Care, Custody or Control" of Occidental, a Purported Additional Insured.

The Despres Lawsuit alleges that Mr. Despres was in the care of Occidental and that Occidental owed a duty to provide a safe workplace for Despres. *See, e.g., Ex. B*, ¶ 14. In its Petition against Berkley, Liberty alleges that Occidental is an additional insured under the Policy. Based on the allegations in the Liberty Petition, Mr. Despres was in the "care, custody or control of <u>any insured</u>." It is generally understood that all the terms and exclusion of an insurance policy apply to an additional insured to the same effect as if they were the named insured. *See, e.g.*, *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 555 (Tex. 2022) (stating that although the party "qualified as an 'Additional Insured' under the ... CGL Policy, [it was] subject to any applicable provisions or exclusions").

The Despres Lawsuit clearly alleges that Mr. Despres was in the care, custody or control of Occidental as this forms the basis for Occidental's alleged duty to provide a safe work place as alleged in the complaint. The law in Texas is clear that Occidental owes a duty to provide a safe workplace for Despres, as it was the owner of the worksite. *See, e.g.*, CIVIL ACTION NO. 2:23-CV-00132, *Hinojosa v. Dairy Farmers of Am., Inc.*, 2024 WL 5301760, at *4 (S.D. Tex. Dec. 12, 2024) ("an owner or occupier does not owe a duty to ensure that independent contractors perform their work in a safe manner. But one who

-20-

retains a right to control the contractor's work may be held liable for negligence in exercising that right. This right to control may be expressed by contract or implied by conduct") (quoting *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008)).

Because Liberty alleges that Occidental is an additional insured under the Berkley Policy, the Abuse or Molestation Exclusion applies equally to Occidental as it would to the named insured. Here, because the allegation is that Mr. Despres was assaulted while in the care, custody or control of Occidental (a purported additional insured), Liberty's allegations in its Petition establish that the exclusion applies as a matter of law, and Liberty's Petition must be dismissed with prejudice.

### c. The "Abuse or Molestation Exclusion" Further Applies Because Occidental Is Alleged To Have Been Responsible for the Negligent Retention and Supervision of Mr. Bateman.

The Policy's "Abuse or Molestation Exclusion" additionally excludes coverage under paragraph (b): bodily injury arising out of the negligent employment, investigation, supervision, reporting to the proper authorities, or failure to so report; or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded in Paragraph a. above.

Here, the Despres Lawsuit alleges that Occidental negligently hired, retained or supervised Mr. Bateman. As discussed above, Liberty's position as set forth in its Petition is that Occidental is an additional insured under the Policy. *Ex. A*, ¶ 4. Assuming this is true for the purpose of this Motion, the alleged liability of Occidental, an insured, in the Despres Lawsuit arises out of the negligent hiring, retention and/or supervision of the

-21-

assailant, Mr. Bateman. As such, coverage for the Despres Lawsuit is independently excluded by subsection (b) of the "Abuse and Molestation" exclusion.

## CONCLUSION

For the reasons set forth herein, Berkley respectfully asks the Court to dismiss Plaintiff's Petition in its entirety with prejudice. And Berkley asks for all other relief to which it is justly entitled.

Respectfully submitted,

Candace A. Ourso
State Bar No. 24008952
S.D. Tex. ID No. 23217
Candace.Ourso@kennedyslaw.com
1500 Waugh Blvd, Ste 225
Houston, Texas 77019
T:  832.753.8080
F:  832.753.8079

***ATTORNEY-IN-CHARGE FOR DEFENDANT
BERKLEY NATIONAL INSURANCE
COMPANY***

OF COUNSEL:

**KENNEDYS CMK LLP**

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, a true and correct copy of the foregoing has been served on all known counsel of record, in accordance with the Federal Rules of Civil Procedure.

Candace A. Ourso

-22-